UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | | |
|---|---|---|---|
| IN RE: | GREGORY PALMER | : | Chapter 13 |
| | CHRISTINA PALMER | : | |
| | Debtor(s) | : | Bky. No. 06-14641ELF |

**O R D E R**

**AND NOW,** upon consideration of the Motion for Relief from the Automatic Stay ("the Motion") filed by The Bank of New York ("BONY");

**AND**, the Debtors having filed a written response to the Motion;

**AND**, after an evidentiary hearing on the Motion held and concluded on April 26, 2007;

**AND**, the parties having submitted post-hearing written submissions, the last of which was filed on August 24, 2007;[1]

**Background**

**AND**, Debtor Christina Palmer ("Ms. Palmer") being the owner of the residential real property located at 4945 Chester Creek Road, Brookhaven, PA 19015 ("the Property");[2]

**AND**, the Property being encumbered by a mortgage ("the Mortgage") resulting from a mortgage refinance transaction ("the Transaction") between Ms. Palmer and Ameribanq Mortgage Group, LLC ("Ameribanq") (BONY's predecessor-in-interest) that took place on

---

[1] The parties stipulated to several extensions of the deadlines for the filing of the post-hearing written submissions.

[2] Ms. Palmer is the sole owner of her residential real property ("the Property") where she resides with her co-debtor spouse.

-1-

October 6, 2004;

**AND**, as a result of the Transaction, Ms. Palmer's monthly mortgage payment having increased from approximately $1,400.00 per month to $2,300.00 per month,[3] subject to further increases under the adjustable interest rate terms of the Mortgage;

**AND**, BONY being the current holder of the Mortgage on the Property;

**the District Court Action**

**AND**, on April 28, 2005, less than seven (7) months after the Transaction, Ms. Palmer having filed a lawsuit against Ameribanq and Countrywide Home Loans ("Countrywide")[4] in the U.S. District Court ("the District Court Action");

**AND**, in the District Court Action, Ms. Palmer having asserted, inter alia, a claim for rescission of the Mortgage under the federal Truth-in-Lending Act, 15 U.S.C. §§1601 et seq. ("TILA");[5]

---

[3] The loan documents in the Transaction refer to an initial monthly payment of $1,790.00 for repayment of principal and interest on the loan. This monthly payment amount does not include an escrow component for real estate taxes and insurance. Presumably, the addition of an escrow component increased the monthly payment from $1,790.00 to approximately $2,300.00. By comparison,, I understood Ms. Palmer's testimony to be that the $1,400.00 per month payment under her prior mortgage included an escrow component, although the record is not crystal clear on this point. Thus, the Transaction increased Ms. Palmer's monthly mortgage payment by approximately $900.00.

[4] It appears that Countrywide has been either a holder or servicer of the Mortgage throughout much of the time period since the consummation of the Transaction.

[5] Ms. Palmer also asserted: (1) a claim for the statutory civil penalty of $2,000.00 under TILA; (2) a claim under the federal Equal Credit Opportunity Act, 15 U.S.C. §§1691 et seq.; and (3) the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1 et seq.

**AND**, a motion to dismiss the complaint having been filed by Ameribanq in the District Court Action on July 1, 2005;[6]

**AND**, the District Court not yet having ruled on the motion to dismiss filed in the District Court Action;

**AND**, it appearing that Ms. Palmer ceased making regular monthly mortgage payments in repayment of the Mortgage in or about October 2005;[7]

**the District Court Action and this Bankruptcy Case**

**AND**, BONY having commenced an action in mortgage foreclosure against Ms. Palmer on October 10, 2006 in the Court of Common Pleas, Delaware County ("the State Court Action");

**AND**, the State Court Action having progressed no further than the filing of the complaint because the next day, on October 11, 2006, the Debtors commenced this bankruptcy case by filing a voluntary petition under chapter 7 of the Bankruptcy Code;[8]

**AND**, on October 27, 2006, the Debtors having filed a motion to convert the bankruptcy case from chapter 7 to chapter 13 ("the Motion to Convert");

---

[6]  Countrywide filed an answer to the complaint rather than a motion to dismiss.

[7]  BONY, acting through its servicer (Countrywide), has filed a proof of claim stating that it holds a secured claim of $248,417.32 and that the prepetition arrearage on the Mortgage is $33,626.72. The attached itemization of the prepetition arrears states that the Mortgage is delinquent back to October 2005.

[8]  Presumably, the Complaint in the State Court Action had not been served before the bankruptcy case was commenced and therefore, it is probable that the Debtors were unaware of the existence of the State Court Action when they filed the bankruptcy case.

**AND**, the Motion to Convert not having been contested and having been granted by Order dated November 1, 2006;

**the Motion to Transfer the District Court Action to this Court**

**AND**, on October 30, 2006, Ms. Palmer having filed a motion in the District Court Action, requesting that it be transferred to this court;

**AND**, the District Court not yet having ruled on the motion to transfer the District Court Action to the bankruptcy court;

**the Motion**

**AND**, the Motion having been filed on January 22, 2007;

**AND**, BONY asserting that Ms. Palmer's failure to pay the postpetition monthly instalments contractually falling due constitutes "cause" for granting relief from the automatic stay under 11 U.S.C. §362(d)(1);[9]

**AND**, a postpetition default in mortgage payments meeting a secured creditor's burden of production in prosecuting a motion for relief from the automatic stay under 11 U.S.C.

---

[9] In the Motion, BONY did not state specifically whether its was seeking relief under §362(d)(1) or (d)(2) or both. It stated only that it has "cause" for termination of the automatic stay. From this, I infer that BONY seeks relief only under §362(d)(1), which provides for relief from the automatic stay "for cause, including the lack of adequate protection of an interest in property." BONY's primary argument at the hearing was consistent with my interpretation of the Motion as a §362(d)(1) motion. BONY made no argument at the hearing on the issue that the Property is necessary to an effective reorganization. BONY's primary contention was that there is cause for relief from stay because, as of the hearing date, no postpetition contractual payments had been made and BONY lacked adequate protection. See N.T. 8. These arguments are traditional §362(d)(1) arguments.

§362(d)(1);[10]

**AND**, Ms. Palmer defending against the Motion on the ground that BONY does not hold a valid mortgage due to her rescission of the mortgage under TILA as set forth in her complaint in the District Court Action;[11]

**the Hearing on the Motion and the Interim Order**

**AND**, an evidentiary hearing on the Motion having been held on April 26, 2007;

**AND**, at the hearing, Ms. Palmer and BONY having introduced evidence relating to the TILA rescission claim pending in the District Court Action, so as to permit this court to make a preliminary assessment regarding the merits of Ms. Palmer's TILA rescission claim;[12]

**AND**, by Interim Order dated April 27, 2007, pending its ruling on the Motion, the court

---

[10] See In re Dupell, 235 B.R. 783 (Bankr. E.D. Pa. 1999)(citing In re Skipworth, 69 B.R. 526 (Bankr. E.D. Pa. 1987); In re Wright, Egan & Associates, 60 B.R. 806 (Bankr. E.D. Pa. 1986); In re Keays, 36 B.R. 1016 (Bankr. E.D. Pa. 1984)).

[11] Debtors' Answer to Motion of Bank of New York for Relief from the Automatic Stay ¶6 (Docket Entry No. 48).

[12] Both parties viewed the merits of the TILA rescission claim as relevant in this court's determination whether there is "cause" for granting relief from the automatic stay under §362(d)(1). Ms. Palmer believes that the court should treat the District Court Action as the functional equivalent to an objection to BONY's proof of claim. She expects the TILA litigation to be successful, resulting in: (1) the Mortgage being determined invalid and (2) her personal liability for the loan given in the Transaction being adjusted in a manner that permits her to protect her residence. Thus, Ms. Palmer contends that due to her reasonable likelihood of success in the TILA litigation, BONY lacks "cause" for relief from the automatic stay. BONY posits that, even if Ms. Palmer were to provide adequate protection during the pendency of the District Court Action, maintaining the stay is pointless because Ms. Palmer's TILA rescission claim is patently without merit.

As explained below, in order to decide the Motion, I find it unnecessary to opine on the merits of the TILA rescission claim. See nn.17-18, 21 & accompanying text.

having conditioned the maintenance of the automatic stay on Ms. Palmer providing BONY adequate protection of its interest in the Property in the form of:

    A.  monthly payments to BONY of $1,669.00 per month,

    B.  payment of all real estate taxes as they fall due, and

    C.  maintenance of property insurance on the Property;

**the Debtors' Treatment of BONY's Claim in their Proposed Chapter 13 Plan**

**AND**, a chapter 13 debtor generally having four (4) options in treating a secured claim in a chapter 13 case:

    (1) providing for full payment of the claim;[13]

    (2) providing for a "cure" of the prepetition delinquency;[14]

    (3) surrendering the secured property to the secured creditor;[15] and

    (4) "not providing for" the secured claim at all, in which case the claim and the lien pass through the bankruptcy case unaffected;[16]

---

[13] See 11 U.S.C. §1325(a)(5)(B); In re Bryant, 323 B.R. 635, 645 (Bankr. E.D. Pa. 2005); see generally Till v. SCS Credit Corp., 541 U.S. 465, 468-469, 124 S.Ct. 1951, 1955 (2004) (discussing the methodology for determining the present value of a secured claim being paid in full through a stream of plan payments).

[14] See 11 U.S.C. §1322(b)(5); Sapos v. Provident Institution of Savings, 967 F.2d 918, 922 (3d Cir. 1992) (referring to §1322(b)(5) as a "cure and maintain" alternative to full payment of a secured claim), overruled on other grounds, Nobelman v. American Savings Bank 508 U..S. 324, 113 S.Ct. 2106 (1993) ; see generally 2 Keith M. Lundin, Chapter 13 Bankruptcy ¶101.1 (3d ed. 2004).

[15] See 11 U.S.C. §1325(a)(5)(C).

[16] See In re Waldman, 75 B.R. 1005 (Bankr. E.D. Pa. 1987); 8 Collier on Bankruptcy ¶1322.06[1][a] (15th rev. ed. 2006); see generally Lellock v. Prudential Ins. Co. of America, 811 F.2d 186 (3d Cir. 1987) (even though underlying debt is discharged, lien created by

**AND**, paragraph 3 of the Debtors' amended chapter 13 plan providing, in pertinent part:

> The Wife-Debtor has rescinded her loan presently owned by [BONY], but which is serviced by with [sic] Countrywide . . . the first mortgage on the home owned by her . . . . <u>She has filed a lawsuit in federal District Court</u> to enforce their [sic] rescission rights . . . and has moved the District Court to refer the action to this court for determination. <u>In this action, the Debtor is in effect attacking the proof of claim filed in this case by Countrywide. It is believed that the decision in this action will for the most part determine the validity of the proof of claim of Countrywide, and therefore a decision in this case must precede confirmation of the Debtor's [sic] plan.</u> In the interim, the Debtor will make mortgage payments of $1668/month, plus maintain insurance and tax payments, pending confirmation.

<u>See</u> Docket Entry No. 63 (emphasis added);

**AND**, the court concluding that the Debtors' amended chapter 13 plan does not provide for BONY's claim;[17]

---

the debt is not affected by the discharge order); <u>Matter of Tarnow</u>, 749 F.2d 464 (7th Cir. 1984) (a creditor's lien is not affected by the bankruptcy discharge, unless the lien is modified during the case pursuant to a specific Code provision, such as 11 U.S.C. §§522(f) or 1322(b)(2)).

[17]   Paragraph 3 of the amended plan says nothing more than that the Debtors wish to litigate the amount of BONY's claim and that no plan can be confirmed until the amount of the claim is judicially determined. It may be true that a plan proposing to treat a claim cannot be confirmed until litigation regarding the validity, status or amount the claim is concluded. However, the plan must still state what the proposed treatment would be after the debtor succeeds in the claims litigation. In this case, the Debtors' amended plan does not propose to employ any rehabilitation provision of chapter 13 that I recognize to treat BONY's claim after the allowed amount is determined. This is not surprising. Given the original principal amount of the loan in the Transaction ($217,600.00), Ms. Palmer will likely still owe BONY a considerable amount even if she achieves a successful outcome in the District Court Action. Her remaining liability will likely exceed any amount that she could pay off in the five (5) year term permitted under chapter 13.

The reality is that Ms. Palmer is not proposing a plan that invokes any chapter 13 tool for adjustment of her debt relationship with BONY. Rather, Ms. Palmer expects to resolve her mortgage problem through a successful litigation outcome under applicable nonbankruptcy law (<u>i.e.</u>, the consumer protection statutes that she has invoked in the District Court Action). Her rehabilitation theory is premised on the expectation that the District Court Action will result in either: (1) BONY agreeing to recast the Mortgage (and forgive the prepetition arrears) or (2) the District Court providing her an extended period of time in which to tender the loan principal

**the Granting of the Motion**

**AND**, it appearing that there is no substantial rehabilitative purpose to this bankruptcy case, other than to obtain a bankruptcy stay of the State Court Action;[18]

**AND**, as a general principle, a secured creditor whose claim is not provided for in a chapter 13 plan is entitled to relief from the automatic stay under §362(d)(1) to pursue its collateral or its contractual remedies against the chapter 13 debtor;[19]

---

following enforcement of her TILA rescission, see In re Sterten, 352 B.R. 380 (Bankr. E.D. Pa.2006). While this may be an excellent strategy, it does not constitute providing for BONY through the Debtors' chapter 13 plan.

[18]   The Debtors' initial chapter 13 plan provided for plan payments totaling only $540.00 over three (3) years. It is obvious that after payment of the Chapter 13 Trustee's commission and compensation to the Debtors' counsel under 11 U.S.C. §330, the initial plan would have provided virtually no distribution to unsecured creditors. The Debtors' amended chapter 13 plan increased the aggregate plan payment to $3,510.00 over three (3) years. However, this increase may have been motivated by the filing of an unscheduled (and probably unanticipated) priority tax claim filed by the Pennsylvania Department of Revenue in the amount of $1,300.83 and increased counsel fees arising from the services provided by the Debtors' attorney in contesting the Motion. Even with the increased plan funding, the Debtors' proposed plan will provide virtually no distribution to unsecured creditors. As Chief Judge Sigmund observed in a related context, while the Debtors apparently need bankruptcy relief, "it is to discharge debts, not reorganize." In re Wile, 304 B.R. 98, 208 (Bankr. E.D. Pa. 2004).

[19]   See 8 Collier on Bankruptcy ¶1325.06[1][b] (15th rev. ed. 2007); In re Hogan, 346 B.R. 715, 723 (Bankr. N.D Tex. 2006) (in context of case in which secured creditor did not file a proof of claim, stating principle that chapter 13 debtor cannot remain in possession of a secured creditor's collateral during the pendency of its plan where the debtor's plan makes no provision the claim); In re Vincente, 260 B.R. 354, 357-58 (Bankr. E.D. Pa. 2001) (in context of considering motion to dismiss case, stating principle that secured creditor that is not provided for by the debtor's plan is entitled to stay relief); In re Evans, 66 B.R. 506, 510 (Bankr. E.D. Pa.1986), aff'd, 77 B.R. 457 (E.D. Pa. 1987) (same principle stated in context of objection to confirmation).

**AND**, absent unusual circumstances not present here,[20] the presumptive right of a secured creditor not provided for by a debtor's chapter 13 plan to pursue its claims under applicable nonbankruptcy law making it unnecessary for the court to make any preliminary finding as to the merits of Ms. Palmer's TILA rescission claim;[21]

**AND**, although there have been delays in the resolution of Ms. Palmer' claims in the District Court Action, it appears that she will suffer no prejudice if relief from the automatic stay is granted because she can assert her TILA rescission claim as a defense in the State Court Action and, if necessary, seek a stay of the State Court Action from the District Court;

---

[20]    See In re Chedick, 1996 WL 762329 (Bankr. D.D.C. March 22, 1996). In Cheddick, a decision that the court characterized as the exception to the ordinary rule, the court denied relief from the automatic stay to a secured creditor whose claim was not provided for in confirmed plan because: (a) the confirmed plan stated that the claim would be challenged in litigation and (b) the debtor demonstrated that the secured creditor was adequately protected by an equity cushion. In this case, there is no equity in the Property (although since the entry of the Interim Order, the Debtors have been making adequate protection payments to BONY). More importantly, there is no confirmed plan in this case. In this case, rather than accepting the "outside-of-bankruptcy litigation" treatment proposed by the Debtors' plan (as the Cheddick creditor apparently had), BONY has come forward and, by filing the Motion, has, in effect, objected to the proposed plan treatment.

[21]    If Ms. Palmer had proposed to address BONY's claim through her chapter 13 plan, her potential for success in the District Court Action may have been relevant in the determination whether to maintain the stay in place. In a case in which the confirmability of a plan hinges on the outcome of litigation that will determine the allowability and amount of a secured claim, the merits of the litigation may be relevant in deciding whether the automatic stay should remain in effect, especially if the claim dispute is being determined in a nonbankruptcy forum. In such a case, the existence or non-existence of adequate protection also may be significant.

It is hereby **ORDERED** that:

1. The Motion is **GRANTED**.

2. The automatic stay is **MODIFIED** to permit BONY to exercise its rights and remedies under applicable nonbankruptcy law to seek foreclosure and possession of the property located at **495 Chester Creek Road, Brookhaven, PA 19015**.

**Date:** **November 14, 2007**

**ERIC L. FRANK**
**U.S. BANKRUPTCY JUDGE**